UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

JINTANA HAMPTON,

      Plaintiff,

v.

UNITED AIRLINES, INC.,

      Defendant,

Case No. 5:25-cv-812-KCD-PRL

_____/

## **ORDER**

Like all corporations during the COVID-19 pandemic, Defendant United Airlines—a national company headquartered in Chicago—was put in a difficult situation to ensure the health and safety of its employees and customers. It responded by implementing a company-wide COVID vaccine mandate. But that decision collided with the religious views of some employees, like Plaintiff Jintana Hampton. As a devout Christian, she requested a vaccine exemption on religious grounds. (Doc. 20 at 3.)[1]

United initially denied Hampton's exemption request because of its untimeliness. (*Id.*) Eventually, United terminated Hampton's employment. (Doc. 27 at 5.) She then sued United for religious discrimination and retaliation. (*Id.*) Although Hampton was briefly part of a class action in Texas,

---

[1] Unless otherwise indicated, all internal quotation marks, citations, case history, and alterations have been omitted in this and later citations.

she removed herself and brought this case to Florida because United transferred her to the Sunshine State in 2021. (Doc. 25 at 1.)

United now looks to transfer the case to Illinois. (Doc. 20.) It argues the decisions regarding Hampton's vaccine exemption request are all in Chicago. Thus, the suit should be there too. (*Id.* at 1-2.) But a venue transfer requires more than unidentified witnesses and their vaccine policy decisions in Chicago to overcome the deference this court must give to Hampton's venue choice. This deference is especially applicable because United sent her to Florida. (Doc. 25 at 1.) For the reasons below, the motion is **DENIED**.

## I. Background

These are the relevant facts taken from the complaint, which must be accepted as true at this stage. In 2021, during the COVID-19 pandemic, United implemented a company-wide vaccine mandate. (Doc. 20 at 3.) Every employee would either get the vaccine, receive an exemption, or have their employment terminated. (*Id.*, Doc. 27 at 5.) To obtain a religious or medical exemption, the company set a deadline of August 31, 2021. (Doc. 20 at 3.)

Plaintiff Jintana Hampton, a devout Christian, applied for a religious exemption—but she did so a month late. (Doc. 27 at 3-4.) Hampton was on leave at the time, and per company policy, employees on leave could alternatively request an exemption a month prior to returning to work. (*Id.* at 4.) Nevertheless, United denied her request as untimely. (Doc. 20 at 3.)

Hampton then sent another one, but United never responded. (*Id.* at 4.) Months later, Hampton met with United employees to discuss her failure to get the vaccine. (Doc. 27 at 4-5.) Days after the meeting, Hampton was fired. (*Id.* at 5.) The company's stated reason was her failure to get vaccinated. (*Id.*)

United has seen many lawsuits over its vaccine policy. Hampton initially joined one of those cases—a class action lawsuit in Texas, comprising of former employees that United fired. (Doc. 20 at 4.) But Hampton later withdrew from that suit and filed this individual case in Florida. (*Id.*) She has lived there since 2021, when United moved her as part of a reallocation. (Doc. 25-1 at ¶ 2.) She has brought claims for religious discrimination and retaliation. (Doc. 20 at 1.)

United now seeks to transfer the case to the Northern District of Illinois under 28 U.S.C. § 1404(a). (Doc. 20 at 1.) United's pitch is centered on its home base in Chicago. According to the airline, that is where the real action happened: the Chicago-based personnel designed the vaccine mandate, reviewed and rejected Hampton's exemption request, and ultimately made the decision to fire her. (*Id.* at 3.) And, United adds, its corporate headquarters is where all the relevant policy documents and records are stored. (*Id.*)

## II. Legal Standard

Section 1404(a) allows district courts to transfer "any civil action to any other district or division where it might have been brought" for "the convenience of parties and witnesses." 28 U.S.C § 1404(a). This provision

confers "broad discretion" to transfer cases to a more convenient forum. *England v. ITT Thompson Indus., Inc.*, 856 F.2d 1518, 1520 (11th Cir. 1988).

Absent the parties' consent, the transfer analysis unfolds in two steps. *Nat'l Tr. Ins. Co. v. Pennsylvania Nat'l Mut. Cas. Ins. Co.*, 223 F. Supp. 3d 1236, 1241 (M.D. Fla. 2016). First, courts must determine whether the case could have been filed in the proposed district. *Id.*; *Bookworld Trade, Inc. v. Daughters of St. Paul, Inc.*, No. 806-CV-1746-T-27MAP, 2006 WL 3333718, at *1 (M.D. Fla. Nov. 16, 2006). If so, the court must determine whether transfer is proper by weighing several factors:

> (1) the convenience of the witnesses; (2) the location of relevant documents and the relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) a forum's familiarity with the governing law; (8) the weight accorded a plaintiff's choice of forum; and (9) trial efficiency and the interests of justice, based on the totality of the circumstances.

*Manuel v. Convergys Corp.*, 430 F.3d 1132, 1135 n.1 (11th Cir. 2005).

### III. Discussion

Both parties agree that this case could have been brought in the Northern District of Illinois. But that is where the agreement ends. They otherwise dispute every 1404(a) factor. As explained below, the Court finds that the balance tips against sending this case to Chicago. The factors are

4

sorted into three camps: those against transfer, those remaining neutral, and factors favoring transfer.

### A. Factors Against Transfer

### i. Weight Accorded to Plaintiff's Choice of Forum

In the 1404(a) calculus, the plaintiff's forum choice is "[t]he factor that weighs most heavily against transfer," and is typically "given considerable deference." *Smith v. Costco Wholesale Corp.*, No. 8:21-CV-2472-VMC-JSS, 2021 WL 5114494, at \*2 (M.D. Fla. Nov. 3, 2021); *see also Robinson v. Giarmarco & Bill, P.C.*, 74 F.3d 253, 260 (11th Cir. 1996) ("The plaintiff's choice of forum should not be disturbed unless it is clearly outweighed by other considerations."). Because Hampton brought this suit in her home state, her selection arrives with a strong presumption in its favor—and United has done nothing to diminish it.

United tries to chip away at this deference by labeling Hampton a forum shopper. (Doc. 20 at 10.) United points to a Texas-based class action that she briefly joined. (*Id.*) But this argument falls short for three reasons. First, she did not choose Texas. She joined a multi-plaintiff action to preserve her rights while broader class issues were sorted out. (Doc. 25 at 6.) Second, she voluntarily walked away from the Texas case before it got off the ground. (*Id.*) Finally, this case is the opposite of forum shopping. She is suing in her home state—the exact place where United stationed her. (*Id.*) Seeking relief in your

own backyard is not forum shopping; it is the standard choice. The deference to Hampton's forum choice remains and weighs heavily against transfer.

### ii. Convenience of the Parties

"The convenience of the parties concerns the appearance of the parties at court for hearings and trial and, to some extent, the appearance of counsel." *Bayuk v. Prisiajniouk*, No. 8:18-CV-163-T-MAP, 2018 WL 4193679, at *3 (M.D. Fla. May 30, 2018). But "[w]hen a transfer of venue would merely shift the inconvenience from the defendant to the plaintiff, the plaintiff's forum choice should not be disturbed." *Id.*; *Craig v. Target Corp.*, No. 2:23-CV-599-JLB-KCD, 2024 WL 4981026, at *4 (M.D. Fla. Dec. 4, 2024) ("While Defendants briefly state that expense would be reduced by transferring this case to Minnesota, Defendants overlook the heavy burdens that transfer would place on the Plaintiffs."). This is the case here. A venue transfer to Chicago would merely shift the inconvenience to Hampton because she would need to travel to Illinois. (*Id.* at 12.)

United disagrees, arguing that the logistics and costs involved in transporting its witnesses to Florida outweighs any hardship on Hampton. (Doc. 20 at 13.) It also contends that the parties' financial positions alone cannot defeat a transfer. (*Id.)* United's points are well taken but unpersuasive. First, the parties' financial ability is relevant in determining this factor's importance. *See Am. Residential Equities, LLC v. Select Portfolio Servicing,*

6

*Inc.*, No. 06-20007-CIV, 2006 WL 8433459, at \*2 (S.D. Fla. Apr. 19, 2006). Second, United—a billion-dollar transportation company with 1,000 planes— is not burdened more than Hampton by sending three witnesses to Florida. (Doc. 25 at 11.) At bottom, this factor does not favor transfer.

### iii. Relative Means of the Parties

To be sure, the relative means of the parties favors transfer when "litigating the matter in the present district would be a great expense and cause an undue burden [to the moving party]." *Pac. Coast Marine Windshields Ltd. v. Malibu Boats, LLC*, No. 610CV1285ORL28DAB, 2011 WL 13142151, at \*6 (M.D. Fla. Sept. 20, 2011). But a "large corporation with vast resources" has much greater means than an individual. *Poertner v. Gillette Co.*, No. 6:12-CV-803-ORL-31DAB, 2012 WL 12898875, at \*3 (M.D. Fla. July 9, 2012). The financial mismatch here is obvious. Forcing Hampton to truck her claims across the country would impose a genuine burden, especially given that she has "struggled to find steady employment" since she was fired. (*Id.* at 11-12.) For a global airline, however, litigating in Florida is just a routine cost of doing business. This factor points squarely toward keeping the case here. *See Manuel*, 430 F.3d at 1137.

7

## B. Neutral Factors

### i. Convenience of the Witnesses

"The convenience of witnesses is generally considered one of the most—if not the most—important factors in a venue transfer analysis." *In re Target Corp. S'holder Derivative Action Litig.,* No. 2:25-CV-21-KCD-DNF, 2025 WL 3187103, at *2 (M.D. Fla. Nov. 14, 2025). United leans heavily on this rule. But this factor's importance is significantly diminished here for several reasons.

First, even though United identified three "anticipated witnesses" in Chicago, they are all employees. (Doc. 20 at 11; Limacher Decl. ¶10). And "[t]he significance of this factor is diminished in this case, since neither party has identified any nonparty witnesses who will testify at trial." *Deerfield Auto., LLC v. Hyundai Motor Am. Corp.*, No. 6:25-CV-1307-PGB-LHP, 2025 WL 2896969, at *4 (M.D. Fla. Oct. 10, 2025).

Second, a party cannot just name-drop witnesses to secure a transfer. The movant must specify their expected testimony so the court can look at the substance and determine if their presence is truly material. *See Trinity Christian Ctr. of Santa Ana, Inc. v. New Frontier Media, Inc.*, 761 F. Supp. 2d 1322, 1327 (M.D. Fla. 2010). United failed to provide that crucial detail, leaving the Court to guess at what these employees are needed for.

Finally, there is the nature of United's business. It is a global transportation company. (Doc. 25 at 8-9.) "[T]he convenience of witnesses is a

8

lesser consideration where, as here, the defendant is a transportation company and is able to bring the witnesses to the forum with little difficulty." *Stewart v. Am. Eagle Airlines, Inc.*, No. 3:10-00494, 2010 WL 4537039, at *3 (M.D. Tenn. Nov. 3, 2010); *see also Gunder v. CSX Transp., Inc.*, No. CIV A 08-CV-6029, 2009 WL 2004377, at *3 n.3 (E.D. Pa. July 8, 2009). Put it all together, and this factor does very little to disturb Hampton's forum choice.

### ii. Locus of Operative Facts

"In determining the locus of operative facts, the court must look at the site of events from which the claim arises." *Craig*, 2024 WL 4981026, at *5. This factor is neutral when, as here, the key events are split across multiple states. *See e.g.*, *Ehrlich v. Rich Prods. Corp.*, No. 8:16-cv-3532-S_B-TGW, 2017 WL 2869655, at *4 (M.D. Fla. May 15, 2017).

True enough, United made its high-level corporate decisions in Chicago. (Doc. 20 at 13.) But those decisions landed on Hampton's employment status right here in Florida. (Doc. 25 at 14.) As courts routinely recognize, when an employer's policy decisions are developed in one state but their real-world application hits an employee in another, the case has two distinct homes. *See Combs v. Fla. Dep't of Corr.*, 461 F. Supp. 3d 1203, 1211 (N.D. Fla. 2020); *Arnold v. Target Contractors LLC*, No. 5:24-CV-276-ACC-PRL, 2025 WL 1203104, at *3 (M.D. Fla. Feb. 27, 2025) (finding two loci of operative facts

9

when "Defendant's compensation decisions were developed in South Carolina, [but] the application of these decisions to Plaintiff occurred in Florida").

United relies on a trio of vaccine-mandate cases—*Wickstrom*, *Engstrom*, and *Reinauer*[2]—to suggest that Chicago should win this tug-of-war. (Doc. 20 at 14.) But those cases do not create a blanket rule for every flight attendant's claim. While they certainly confirm that United's corporate policy runs out of Illinois, they do not negate the localized impact felt by an employee stationed in Florida. Because the decision-making happened in Illinois but the professional and financial fallout occurred in Florida, the loci of operative facts essentially cancel each other out.

### iii. Location of Relevant Documents

This factor "examines the location of sources of documentary proof and other tangible materials, and the ease with which the parties can transport them to trial." *Craig*, 2024 WL 4981026, at *4. United points to its corporate records in Chicago to support transfer. But the location of relevant documents has become increasingly irrelevant with modern technology. *See Nat'l Tr. Ins. Co. v. Pennsylvania Nat'l Mut. Cas. Ins. Co.*, 223 F. Supp. 3d 1236, 1243-44 (M.D. Fla. 2016). Exchanging documents is no longer a problem because

---

[2] *See Wickstrom v. Airline Pilots Association*, No. EP-22-CV-315-DB, 2023 WL 3103836 (N.D. Ill April 23, 2023); *Engstrom v. Airline Pilots Association, International et al.*, No. 6:22-CV-02130-WWB-RMN (M.D. Fla. Nov. 6, 2023)*Reinauer v. United Airlines, Inc.*, No. 8:24-CV-2358-CEH-AAS, 2025 WL 3200726, at *1 (M.D. Fla. Nov. 17, 2025).

parties can easily transfer them electronically. *See Craig*, 2024 WL 4981026, at *4. (holding "that this factor does not favor transfer because modern technology has advanced to allow the electronic transmittal of documents, which lessens the burden of exchanging discoverable information."); *Nat'l Tr. Ins. Co*, 223 F. Supp. 3d at 1243-44. ("[T]he location of relevant documents and other tangible sources is no longer a heavily weighted factor . . . given that technological advances now permit the electronic transmittal of documents."). Because United can seemingly transfer any relevant record electronically, the location of the files does not give either side an advantage. This factor is neutral.

### iv. Availability of Process to Compel the Attendance of Unwilling Witnesses

United expresses concern that, because its key personnel sit in Chicago, this Court lacks the subpoena power to force them to show up at trial. (Doc. 20 at 14-15.) But that concern is entirely hypothetical. United has offered no evidence that its witnesses are unwilling to testify in Florida. *See Fruitstone v. Spartan Race Inc.*, 464 F. Supp. 3d 1268, 1281 (S.D. Fla. 2020) (finding no weight for transfer when all witnesses are employees and there is no evidence of their unwillingness to testify). Also, United's witnesses are its own employees. As courts routinely recognize, the judiciary does not need to deploy its subpoena power to solve a problem that a corporate defendant can handle

11

with an internal directive. *See J2 Global Communications, Inc. v. Protus IP Solutions, Inc.*, No. CIV.A. 6:08-CV-211, 2008 WL 5378010, *3 (E.D. Tex. 2008) ("The Court presumes that the parties will be able to make their employees available to testify if necessary."). This factor is thus neutral.

### v. Forum's Familiarity with the Governing Law.

Typically, a local tribunal "indisputably enjoys an advantage over" an out-of-state court in "deciding a claim based on" its own law. *In re Target Corp*, 2025 WL 3187126 at *3. But that advantage diminishes when the state law is not complicated. *See Snyder v. Bertucci's Rest. Corp.*, No. CIV.A. 12-5382, 2012 WL 6601384, at *5 (E.D. Pa. Dec. 18, 2012) ("[F]ederal judges are frequently called upon to apply the laws of other states [when the law in question is] not so complicated[.]").

Hampton's case includes a claim under the Florida Civil Rights Act (FCRA). On its face, that looks like a point for keeping the case here. Yet, as United points out, the FCRA applies "the same analytical framework" as Title VII. (*Id.* at 16.) This argument has merit. "The FCRA was patterned after Title VII, and case law interpreting Title VII applies to cases arising under the FCRA." *Wood v. Fla. Atl. Univ. Bd. of Trs.*, 432 F. App'x 812, 816 (11th Cir. 2011). "[T]he court grants this factor no weight as any federal district court would be familiar with the law governing such a claim." *Watson v. Earthbound*

12

*Holding, LLC*, No. 2:12-CV-2263-SLB, 2012 WL 3775760, at *5 (N.D. Ala. Aug. 27, 2012).

### C. Factors Favoring Transfer

#### i. Trial Efficiency and the Interests of Justice

Finally, trial efficiency tilts in United's direction. Several lawsuits challenging its vaccine mandate have already landed in the Northern District of Illinois. (Doc. 20 at 17–18.) And as a general matter, judicial efficiency is well-served when cases involving substantially identical facts and legal questions are grouped before the same court. *See Bement v. United Airlines, Inc.*, No. 6:24-CV-873-PGB-EJK, 2024 WL 4349151, at *7 (M.D. Fla. Sept. 30, 2024). But this alone is not enough to overcome United's burden when the rest of the § 1404(a) landscape stands firmly in opposition. *See Patent Harbor, LLC v. Twentieth Century Fox Home Entertainment, LLC*, 2012 WL 1903875, *5 (E.D. Tex. 2012).

### IV. Conclusion

Section 1404(a) gives this Court broad discretion to decide where a case belongs, and the record here leaves no doubt about the proper outcome. While United prefers its home turf in Chicago, its arguments for consolidated efficiency cannot override the heavy deference owed to Hampton's choice of her home forum or the stark disparity in the parties' financial means. Because most of the venue factors either stand neutral or side with Hampton,

13

transferring this case would simply shift corporate inconvenience onto an individual plaintiff who is already at a significant disadvantage. Accordingly, United's Motion to Transfer (Doc. 20) is **DENIED**.

**ORDERED** in Fort Myers, Florida on July 9, 2026.

Kyle C. Dudek
United States District Judge

14