UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

JINTANA HAMPTON,

      Plaintiff,

    v.

UNITED AIRLINES, INC.,

      Defendant.

_____/

Case No. 5:25-cv-812-KCD-PRL

## **ORDER**

After nearly three decades as a United Airlines flight attendant, Plaintiff Jintana Hampton sought a religious exemption from the company's COVID-19 vaccine mandate. She was instead fired and now sues. (Doc. 1.) United moves to dismiss the complaint, arguing primarily that Hampton lost her job because she missed the deadline to submit her exemption request and not for any religious animus. (Doc. 24.) Because the Court must accept Hampton's allegations as true at this stage, United's motion to dismiss is **GRANTED IN PART AND DENIED IN PART**.

## I. Background

Here are the relevant facts taken from the complaint. When United rolled out its COVID-19 vaccine mandate, it gave employees a choice: get the shot or request a religious or medical exemption by August 31, 2021. (Doc. 1 at 7.) Fail to do either, and you lose your job. But United wrote an exception into

the policy for employees on leave, allowing them to wait and start the accommodation process a month before their anticipated return date. (*Id.*)

That exception covered Hampton. She was on approved medical leave when the mandate took effect and did not plan to return until early 2022. (*Id.* at 9.) Operating under the leave provision, she submitted her religious accommodation request on September 19, 2021. (*Id.*)

United summarily rejected it because Hampton missed the general August 31 deadline. (*Id.*) She immediately resubmitted the paperwork on September 24, specifically pointing out that she was on leave. United responded with silence. (*Id.*)

Instead of engaging with her request, United summoned Hampton to an investigatory meeting months later. (*Id.*) She reiterated her religious objections to the vaccine. United fired her that same day. (*Id.* at 10.) A subsequent letter confirmed she was discharged solely for failing to comply with the vaccine policy. (*Id.*)

After filing a charge of discrimination, Hampton brought this suit. She asserts Title VII claims for failure to accommodate (Count I), religious discrimination (Count II), and retaliation (Count III), alongside a parallel claim under the Florida Civil Rights Act (Count IV). Because the FCRA mirrors Title VII, these federal and state claims rise and fall together. *See Harper v. Blockbuster Ent. Corp.*, 139 F.3d 1385, 1387 (11th Cir. 1998).

2

United now moves to dismiss the complaint in its entirety. The airline's core defense is temporal: because Hampton missed the initial deadline, her failure-to-accommodate claim is facially deficient. As for her intentional discrimination claim, United faults Hampton for failing to name a specific decisionmaker or point to any similarly situated coworkers who got a better deal. The retaliation claim likewise flops, according to United, because asking for a religious exemption is not protected activity, and even if it were, the six-month gap between her request and termination severs any causal link. Finally, United attacls the state-law claim on procedural grounds, labeling it an impermissible shotgun pleading. These issues are addressed in turn below.

## II. Legal Standard

To survive a motion to dismiss, "a complaint must contain sufficient facts, accepted as true, to state a facially plausible claim for relief." *Galette v. Goodell*, No. 23-10896, 2023 WL 7391697, at *3 (11th Cir. Nov. 8, 2023). "A claim is facially plausible if it pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

When reviewing a motion to dismiss, courts must accept all factual allegations in the complaint as true and view the facts in the light most favorable to the plaintiff. *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007). "[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires

3

more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "[C]onclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts will not prevent dismissal." *Davila* v. *Delta Air Lines, Inc.*, 326 F.3d 1183, 1185 (11th Cir. 2003).

### III. Discussion

**Count I – Failure to Accommodate**

Title VII of the Civil Rights Act of 1964 has made it unlawful for covered employers "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges [of] employment, because of such individual's ... religion." 42 U.S.C. § 2000e-2(a)(1). Employers are obligated "to make reasonable accommodations to the religious needs of employees" whenever that would not work an "undue hardship on the conduct of the employer's business." 29 C.F.R. § 1605.1. To state a claim under this framework, Hampton must show that she: (1) holds a sincere religious belief that conflicts with an employment requirement; (2) informed the employer about the conflict; and (3) was discharged for failing to comply with the conflicting employment requirement. *Morrissette-Brown v. Mobile Infirmary Med. Ctr.*, 506 F.3d 1317, 1321 (11th Cir. 2007); *Beadle v. Hillsborough Cnty. Sheriff's Dep't*, 29 F.3d 589, 592 n.5 (11th Cir. 1994).

United first argues that Hampton's claim is barred because the complaint contains no allegations showing that she timely submitted a religious-accommodation request before returning from leave in 2022.[1] (Doc. 24 at 8.) So Hampton's "accommodation request was untimely, and she was therefore terminated for not complying with United's vaccination policy." (*Id.* at 7.) At this point, the Court must accept the well-pleaded facts in the complaint as true. Hampton alleges that United maintained a separate carve-out for employees on medical leave, allowing them to submit an exemption request one month before their anticipated return date. Because she planned to return in early 2022, her September 2021 request *was* timely . (Doc. 1 ¶¶ 30, 31, 33.)

United asks the Court to adopt its own version of events—namely, that Hampton was fired for missing an administrative deadline, not because of her religion. But separating timeliness from religious accommodation is an argument that United makes, not one that the complaint alleges. Hampton maintans that United's executives were openly hostile to religious exemptions, the missed-deadline rationale was pure pretext, and she was fired for her faith.

---

[1] In making this argument, United relies on two exhibits attached to its motion, which were not attached to the complaint. (Docs. 24-2, 24-3.) These are letters from United to Hampton. Ordinarily, a court deciding a motion to dismiss wears blinders, looking only at the four corners of the complaint. But under the incorporation-by-reference doctrine, a court may consider extraneous documents if they are central to the plaintiff's claim and their authenticity is undisputed. Those are the facts here. Hampton references the letters in her complaint and doesn't dispute the documents' authenticity. (Doc. 1 at 9-10.)

The Court must accept Hampton's narrative, not United's competing timeline. *See Tech. Med. Advancements LLC v. Wuhan Gigaa Optronics Tech. Co.*, No. 18-CIV-81674, 2019 WL 3428575, at \*4 (S.D. Fla. May 3, 2019) ("At this stage of the proceedings, when the record before the Court is nearly non-existent, the Court must refrain from adopting a defendant's competing characterization of the evidence when the plaintiff's version is sufficient to state a cause of action."); *Nalcrest Found., Inc. v. Landmark Am. Ins. Co.*, No. 8:18-CV-996-T-24AAS, 2018 WL 4293147, at \*4 (M.D. Fla. July 27, 2018) (court rejected defendant's "implicit[ ] and improper" request that the court "weigh the competing versions of the facts" on a motion to dismiss).

United separately argues that any claim for relief based on the September 24 resubmission is time-barred because she did not exhaust it with the EEOC. The airline points out—correctly—that Hampton's EEOC charge mentions her initial request and the September 22 denial, but says absolutely nothing about her follow-up effort two days later.[2] (*See* Doc. 24-1.)

---

[2] The charge states: I began my employment on or about November 12, 1993. I was employed as a Flight Attendant. On or about July 23, 2021, I was notified by my employer that it would be requiring all employees to be fully vaccinated by September 30, 2021, I sincerely hold a religious belief that conflicts with my employers vaccination requirement. During my employment, I notified my employer of my religious belief and requested a religious accommodation to Respondents Covid-19 vaccination mandate, which was denied, on or about September 22, 2021. After Respondent issued its vaccination mandate and I requested a religious accommodation, Respondent harassed me by sending emails and a postcard to me requesting that I update my vaccination status. In addition, I was harassed by co-workers regarding my vaccination status via Respondent's social media platforms. On or about February 22, 2022, I was discharged. I believe I have been discriminated against because of my religious belief, and in retaliation for engaging in protected activity, in violation of Title

Before setting foot in federal court, a Title VII plaintiff must first take her grievance to the EEOC. *Stamper v. Duval Cnty. Sch. Bd.*, 863 F.3d 1336, 1339-40 (11th Cir. 2017). A plaintiff must file a charge with the EEOC within 180 days of the alleged unlawful employment practice. *See* 42 U.S.C. § 2000e-5(e)(1). Only unlawful employment practices complained of in a timely-filed charge of discrimination can form the basis for liability. *See City of Hialeah, Fla. v. Rojas*, 311 F.3d 1096, 1102 (11th Cir. 2002).

In *Nat'l R.R. Passenger Corp. v. Morgan*, the Supreme Court established general principles for determining whether timely-filed acts in an EEOC charge can save non-timely acts. 536 U.S. 101, 112-114 (2002). First, it held that "discrete discriminatory acts are not actionable if time-barred, even when they are related to acts alleged in timely filed charges." *Id.* at 113. As the Court reasoned, "[d]iscrete acts such as termination, failure to promote, denial of transfer, or refusal to hire" were easy to identify, and each therefore "constitute[d] a separate actionable unlawful employment practice." *Id.* at 114. The Court further reasoned, because each is an identifiable violation of Title VII, "[e]ach discrete discriminatory act start[ed] a new clock for filing charges alleging that act." *Id.* at 113. A party, therefore, must file a charge within 180

---

VII of the Civil Rights Act of 1964, as amended. I believe that my employer discriminated against others because of their religion, in violation of Title VII of the Civil Rights Act of 1964, as amended.

days of the date of a discrete discriminatory or retaliatory act or lose the ability to recover for it. *Id.*

On the current record, the Court cannot say that the September 24 resubmission was a discrete act that was not presented to the EEOC and is thus time-barred. Simply too little is known about it at this stage. Hampton alleges that she "resubmitted her request to correct the error" on September 24. (Doc. 1 ¶¶ 31-33.) That raises the question of whether the September 24 letter was simply an appeal, a clarification of the original request, or a resubmission of her request altogether. This information should be borne out during discovery so the Court can make a more informed analysis under *Nat'l R.R. Passenger Corp.*, 536 U.S. at 113-14. United's motion to dismiss Count I is thus denied.

### Count II – Religious Discrimination

Title VII also draws a hard line against religious discrimination in the workplace. 42 U.S.C. § 2000e-2(a)(1). When an employer fires or penalizes someone because of their faith, the employee can sue. Those claims usually come in two flavors: disparate treatment and disparate impact. *E.E.O.C. v. Abercrombie & Fitch Stores, Inc.*, 575 U.S. 768, 771 (2015). The disparate treatment provision makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of

employment, because of such individual's ... religion." 42 U.S.C. § 2000e-2(a)(1). Disparate treatment claims may proceed under multiple theories, including "traditional disparate-treatment . . . and a failure-to-reasonably-accommodate." *Bailey v. Metro Ambulance Servs., Inc.*, 992 F.3d 1265, 1272 (11th Cir. 2021).

To get a traditional claim off the ground, a plaintiff must allege facts showing that: "(1) she is a member of a protected class; (2) she was subjected to adverse employment action; (3) her employer treated similarly situated [ ] employees more favorably; and (4) she was qualified to do the job." *EEOC v. Joe's Stone Crab, Inc.*, 220 F.3d 1263, 1286 (11th Cir. 2000).

United insists Hampton has failed to connect her firing to her faith. But as already discussed, the airline's claim that it fired her over a missed deadline rather than her religion is a factual defense, not a pleading deficiency. United also faults Hampton for failing to identify similarly situated coworkers who received better treatment. (Doc. 24 at 12.) In doing so, United confuses the standard of proof required "to make [a] prima facie case" with the baseline pleading requirements of this claim. *Johnson v. Miami-Dade Cnty.*, 169 F.4th 1301, 1307 (11th Cir. 2026). A comparator is not required to survive a motion to dismiss. A plaintiff only needs to allege facts that point toward intentional discrimination. *Id.*

9

Hampton clears that bar. She alleges United knew full well about her religious objections, yet fired her for failing to get the shot. What is more, she points to objective hostility: United's CEO publicly warned that any employee who "all the sudden decided I'm really religious" was "putting your job on the line." (Doc. 1 at 7.) That kind of top-down animus directed squarely at religious objectors provides enough factual matter to support an inference of intentional discrimination at this stage. United's motion to dismiss Count II is thus denied.

**Count III - Retaliation**

Title VII's anti-retaliation provision protects employees who oppose unlawful employment practices or seek statutory protection. To show actionable retaliation, Hampton must claim: (1) she engaged in statutorily protected conduct; (2) she suffered adverse employment action; and (3) there is a causal relation between the two events. *Gogel v. Kia Motors Mfg. of Ga., Inc.*, 967 F.3d 1121, 1134 (11th Cir. 2020).

A protected activity includes "informally voicing [discrimination] complaints to one's superiors." *Vincent v. Jefferson Cnty. Bd. of Educ.*, 152 F.4th 1339, 1353 (11th Cir. 2025). An adverse action includes termination of employment. *Selby v. Tyco Healthcare Grp., L.P.*, 301 F. App'x 908, 912 (11th Cir. 2008). And, at this stage, a causal connection "is construed broadly enough that a plaintiff need only establish that the protected activity and the [adverse] action are not completely unrelated." *Vincent*, 152 F.4th at 1353. Thus, a

10

"[c]lose temporal proximity between the protected activity and the adverse action may be sufficient to demonstrate that connection." *Id.*

The question pressed by United here is whether Hampton "opposed any practice made unlawful by Title VII." (Doc. 24 at 14.) According to United, a religious accommodation request doesn't fit the bill. Title VII's opposition clause makes it unlawful for an emplpyer to retaliate against an employee who has "opposed any practice made an unlawful employment practice by this subchapter." 42 U.S.C. § 2000e-3(a). Unlawful practices, of course, include differentiating compensation and benefits on the basis of race, sex, or religion. 42 U.S.C. § 2000e-2(a).

As Hampton points out, it is unsettled whether requesting a religious accommodation is a protected activity. *Compare Walker v. Indian River Transp. Co.*, No. 8:15-CV-2246-T-27TGW, 2017 WL 388921, at *11 (M.D. Fla. Jan. 27, 2017) ("It is undisputed that Walker engaged in protected activity when he requested Fridays off as a religious accommodation."), *and Joseph v. Napolitano*, 839 F. Supp. 2d 1324, 1335 (S.D. Fla. 2012) ("[A]n employee who exercises his right to request a reasonable accommodation for a disability engages in statutorily protected expression."), *with Norris v. Honeywell Int'l, Inc.*, No. 8:22-CV-1675-CEH-TGW, 2023 WL 6256183, at *19 (M.D. Fla. Sept. 26, 2023) ("[S]imply requesting an exemption is not enough to establish a protected activity under Title VII's opposition clause.").

11

But Hampton alleges more than just an accommodation request. Another "unlawful employment practice" she apparently opposed was "United's unlawful misapplication of its arbitrary exemption deadline," which she raised at the February 22 meeting. (Doc. 1 at 13.) A protected activity includes "informally voicing [discrimination] complaints to one's superiors." *Vincent*, 152 F.4th at 1353. To the extent Hampton voiced concern that United was misapplying its deadline to shut down religious accommodation requests, she was doing more than just asking for an exemption—she was calling out discrimination. Pushing back against an employer's practice because it unfairly penalizes religious observers, which is what Hampton seems to be claiming here, is protected opposition under Title VII. *See Crawford v. Metro Gov't of Nashville & Davidson Cnty., Tenn.*, 555 U.S. 271, 276-77 (2009).

United also challenges causation. "To establish a causal connection, a plaintiff must show that the relevant decisionmaker was aware of the protected conduct, and that the protected activity and the adverse actions were not wholly unrelated." *Jones v. Gulf Coast Health Care of Delaware, LLC*, 854 F.3d 1261, 1271 (11th Cir. 2017). United argues that the six-month gap between her September 2021 accomodation request and her February 2022 termination is insufficient to show a causal link. (Doc. 24 at 18.) But that is not the whole story. United terminated her on February 26, 2022, just four days after the investigatory hearing, where she allegedly reiterated her religious

12

conflict with the vaccine requirements and the misapplication of the deadline mentioned above. *See McCann v. Tillman*, 526 F.3d 1370, 1376 (11th Cir. 2008) (holding that five days was sufficient circumstantial evidence of causation); *Donnellon v. Fruehauf Corp.*, 794 F.2d 598, 601 (11th Cir. 1986) (same for one month). Hampton has sufficiently alleged a plausible claim of causation.

### Count IV – FCRA

As mentioned, the FCRA was patterned after Title VII, so the elements and related case law are the same. *Harper*, 139 F.3d at 1387. Because Counts I–III survive, the FCRA claim for religious discrimination survives for the same reasons.

But the Court agrees with United that Count IV suffers from a structural problem. Instead of giving each legal theory its own breathing room, Hampton crams three separate claims—failure to accommodate, disparate treatment, and retaliation—into a single count. (Doc. 24 at 20.) That will not work. Each of those theories comes with its own distinct elements and legal tests. Mashing them together leaves the Court in the dark about how to manage trial or craft workable jury instructions down the road. At bottom, Count IV is really three distinct claims wearing a single hat, and Hampton must separate them out into individual counts.

## IV. Conclusion

For these reasons, Defendant United Airlines' Motion to Dismiss (Doc. 24) is **GRANTED IN PART AND DENIED IN PART**. Hampton may file an amended complaint to address the procedural deficiency with Count IV within fourteen days of this order. Failure to do so will result in Count IV being dismissed without prejudice, and the case proceeding on the surviving claims.

**ORDERED** in Fort Myers, Florida on August 5, 2026.

Kyle C. Dudek
United States District Judge